A08A2257. IN THE INTEREST OF M. W., a child.
A08A2258. IN THE INTEREST OF D. H., a child.
(673 SE2d 554)

MIKELL, Judge.

M. W. and D. H. were tried jointly before the Juvenile Court of Bleckley County on charges of felony obstruction of an officer and simple battery, and both defendants were adjudicated delinquent by reason of their commission of the charged offenses. On appeal, both defendants raise the same two enumerations of error: (1) the

---

adjudication on the charge of felony obstruction of an officer pursuant to OCGA § 16-10-24 (b) must be reversed because the individual who was assaulted was not an officer protected by the statute; and (2) the evidence was insufficient to support the juvenile court's finding of guilt because the state failed to negate the evidence that M. W. and D. H. were acting in self-defense. We consolidate these cases for disposition in a single appeal and affirm the juvenile court.

> When reviewing the sufficiency of evidence supporting a juvenile court's adjudication, we apply the same standard of review used in criminal cases. We construe the evidence in favor of the court's adjudication and determine if a rational trier of fact could have found beyond a reasonable doubt that the juvenile committed the acts charged.[1]

So viewed, the record shows that both M. W. and D. H. were wards of the state. M. W. was committed to the State of Georgia in the care of the Department of Juvenile Justice ("DJJ") by the Juvenile Court of Dougherty County on December 5, 2007, and D. H. was so committed by the same court on November 15, 2007. In January 2008, M. W. and D. H., both of whom were 16 years old at the time, were placed into the custody of the Middle Georgia Wilderness Program (the "MGWP") by the DJJ. The MGWP is operated by a private corporation in accordance with requirements set forth by the DJJ. Pursuant to its contract with the DJJ, the MGWP houses youth committed to the state, effectuating the DJJ's purpose to supervise, detain, and rehabilitate juvenile delinquents committed to the state's custody.

On February 28, 2008, M. W. and D. H. attended class led by Danny McLaughlin, the MGWP's science and social studies teacher. According to McLaughlin, M. W. brought a paper into the classroom that D. H. read out loud, which disrupted the class. McLaughlin asked D. H. to be quiet, but he refused, so McLaughlin called Cornelius James, a team leader, to remove D. H. from class. Minutes after James removed D. H. from the room, M. W. stuck his head out of the classroom door and yelled, "what are y'all doing to my boy?" M. W. then left the room, heading toward James and D. H. McLaughlin watched M. W. walk toward the office where he encountered Joe Ricks, the program manager.

Ricks testified that as the program manager, his primary responsibility was to work with the youth when team leaders encountered difficulties with them. On the day of the incident, Ricks was meeting

---

[1] (Citation omitted.) *In the Interest of J. Q. W.*, 288 Ga. App. 444, 445 (654 SE2d 424) (2007).

YALE LAW LIBRARY

12

with one of the team leaders in his office when he heard over the radio that M. W. had walked out of class. Ricks walked toward the classroom, meeting M. W. en route. Ricks testified that M. W. stated that he needed to see what was happening to D. H., and that Ricks repeatedly told M. W. to return to the classroom, but he refused.

According to Ricks, M. W. turned to walk toward the classroom but then turned again and walked toward Ricks with a pencil in his hand. Ricks repeatedly instructed M. W. to stop, and as M. W. continued to walk toward him, Ricks stepped to the side and grabbed the hand in which M. W. held the pencil and forced M. W. to the ground, causing him to drop the pencil. By that time, James had approached them and helped to restrain M. W. by grabbing his legs. Ricks and James escorted M. W. to Ricks's office. Ricks testified that once they reached his office, M. W. said "M. F., I'm getting ready to stab you." Apparently, M. W. picked up a pen, because Ricks testified that M. W. stabbed him in the side, breaking his skin. Ricks and James then forced M. W. to the floor. Once M. W. stood up, he remarked that the incident was not over. Ricks then directed one of the team leaders to call the sheriff's office.

As Ricks was interacting with M. W., James, the team leader who responded to McLaughlin's announcement that D. H. was disturbing the class, was with D. H. James explained that the incident began when he asked D. H. to give him the folder that contained the paper that D. H. was reading. D. H. complied and asked when it would be returned. D. H. then followed James out of the classroom, asking for the folder, and James told him to go back into the classroom. D. H. continued to follow James into the hallway as he explained that he would return the folder at the end of the day. D. H. then tried to take the folder from James. James testified that D. H. then removed his sweatshirt and continued to grab James's hands and shirt to try to get the folder. Once they were in the office, D. H. threw a chair at James and they struggled until James was able to pin D. H. against the wall. Once D. H. calmed down, Vince Black, another employee, entered the room and began talking to D. H., at which point James left the room and observed Ricks talking to M. W.

Once James left the office, he heard Ricks telling M. W. to go back into the classroom. James testified that M. W. proceeded toward Ricks with a pencil; that Ricks forced M. W. to the floor; and that he helped Ricks restrain M. W. and escort him to the office. James also heard M. W. threaten to stab Ricks with a pen and saw him stab Ricks.

Both D. H. and M. W. testified at the hearing. D. H. testified that James came into the classroom and took his folder; that when they were in the hallway, James threatened to rip the folder; and that D. H. put his hand on the folder to try to stop James. D. H. recalled

that once they began tussling over the folder, other students emerged from the classroom to watch, and James told him to come to the office. According to D. H., once they entered the office, James threw him across the table and on top of the copy machine. The sheriff arrived shortly thereafter and arrested D. H. and M. W. D. H. denied that he hit James or threw a chair at him or that he was reading a letter aloud in McLaughlin's class. D. H. also identified pictures of his injuries from the altercation with James.

M. W. testified that after James removed D. H. from the class, he and his classmates heard D. H. screaming, which is the reason M. W. left the classroom; that he saw James's hands wrapped around D. H.'s neck as he pulled D. H. into the office; that he asked Ricks why D. H. was being restrained without the incident being recorded, explaining that the week before, a little boy had been thrown from a window; and that Ricks responded that he was tired of M. W.'s "M-F" mouth and told M. W. to go to the front office. According to M. W., Ricks grabbed his neck from behind and forced him to the ground and said "if you ever run up on me again, listen, I'll kill you."

M. W. testified that after they entered the office, James held him from behind while Ricks hit him repeatedly. M. W. picked up a pen from Ricks's desk and told him that he would stab him if Ricks hit him again. M. W. testified that although Ricks hit him again, he did not stab him.

1. In their first enumerated errors, M. W. and D. H. challenge the juvenile court's finding that they committed the offense of felony obstruction of an officer, arguing that Messrs. James and Ricks were not included in the range of persons afforded protection by OCGA § 16-10-24 (b). We disagree.

The statute provides as follows:

> Whoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer, prison guard, correctional officer, probation supervisor, parole supervisor, or conservation ranger in the lawful discharge of his official duties by offering or doing violence to the person of such officer or *legally authorized person* is guilty of a felony and shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years.[2]

The question on appeal is whether the victims in the instant case are protected under the statute as "legally authorized persons."

---

[2] (Emphasis supplied.)

The rules of statutory construction require that we follow the words of a statute literally unless the result is an absurdity, contradiction, or such an inconvenience that it is clear that the legislature must have intended something else. We must seek to effectuate the intent of the legislature, OCGA § 1-3-1 (a), and to give each part of the statute meaning and avoid constructions that make some language mere surplusage. All parts of a statute should be harmonized and given sensible and intelligent effect, because it is not presumed that the legislature intended to enact meaningless language.[3]

Guided by these rules, we first point out that had the legislature intended the statute to apply only to those persons expressly listed therein, there would have been no need to add the language "or legally authorized person" as that language would have been mere surplusage. By including the language, the legislature clearly intended to broaden the range of persons who could be protected by the statute. This conclusion is supported by our decision in *In the Interest of M. M.*,[4] in which we held that a juvenile probation officer, though not listed in the statute, was protected by it.[5] We stated in that case that OCGA § 16-10-24 (b) included a wide range of personnel and noted its intent to prohibit resistance towards legally authorized persons.[6] There, the defendant obstructed the officer when he resisted the juvenile probation officer's attempts to take him to the juvenile detention center after he failed a drug test.[7] Since the officer was authorized to take into custody and detain a child under his supervision, we found that he was a legally authorized person lawfully discharging his duties and thus was protected by OCGA § 16-10-24 (b).[8]

In this case, the MGWP exists to effectuate the purposes of the DJJ, which is charged by law to "provide for the supervision, detention, and rehabilitation of juvenile delinquents committed to the state's custody."[9] It was one of James's duties as a team leader to ensure the safety and supervision of all students. Consequently, he

---

[3] (Citations omitted.) *English v. State*, 282 Ga. App. 552, 554-555 (2) (639 SE2d 551) (2006).

[4] 287 Ga. App. 233 (651 SE2d 155) (2007).

[5] Id. at 234.

[6] Id. at 233.

[7] Id.

[8] Id. at 233-234.

[9] See OCGA § 49-4A-3 (b). Pursuant to OCGA § 49-4A-7 (a) (4), the DJJ is authorized to enter into contracts with private institutions, like MGWP, as may be necessary to effectuate its purposes.

was required to prevent and intervene in student altercations and incidents. It was Ricks's duty as program manager to manage and oversee all program operations. Therefore, we find that in attempting to supervise the students and manage the program, the victims were legally authorized persons lawfully discharging their duties. Accordingly, the juvenile court's findings that M. W. and D. H. committed the offense of felony obstruction were supported by the evidence.

2. In their second enumerations of error, appellants argue that the evidence failed to establish beyond a reasonable doubt that they were not acting in self-defense. We disagree.

Where the defendant presents evidence of justification, it is the state's burden to disprove the defense.[10] However, whether the defense has been disproved beyond a reasonable doubt is a question for the trier of fact to resolve[11] and depends greatly on the credibility of the witnesses.[12] In making its determination, the factfinder may believe or disregard parts or all of a defendant's testimony,[13] and as an appellate court, "[w]e will not speculate as to what evidence the trier of fact chose to believe or disbelieve."[14] Here, despite the conflict in the evidence, the trier of fact was authorized to resolve the issue of self-defense against M. W. and D. H.[15] Accordingly, this enumerated error fails as well.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 11, 2009.

*Stephanie D. Burton, Steven M. Harrison*, for appellant.
*Timothy G. Vaughn, District Attorney, Russell P. Spivey, Assistant District Attorney*, for appellee.

---

[10] *Bishop v. State*, 271 Ga. 291 (2) (519 SE2d 206) (1999); *In the Interest of Q. M. L.*, 257 Ga. App. 22, 24 (2) (570 SE2d 92) (2002).

[11] See *Roper v. State*, 281 Ga. 878, 880 (1) (644 SE2d 120) (2007); *Holmes v. State*, 273 Ga. 644, 645 (1) (543 SE2d 688) (2001).

[12] See *Parks v. State*, 281 Ga. App. 679, 680 (1) (637 SE2d 46) (2006); *In the Interest of Q. M. L.*, supra.

[13] *In the Interest of Q. M. L.*, supra.

[14] (Citation omitted.) *In the Interest of A. C.*, 226 Ga. App. 369, 370 (486 SE2d 646) (1997). See also *Pugh v. State*, 280 Ga. App. 137, 138 (1) (633 SE2d 439) (2006) (evidence sufficient to affirm conviction for obstruction of an officer despite conflicting evidence that defendant acted in self-defense).

[15] Id.