308 Ga. 417
FINAL COPY

S20A0104.  MCGARITY v. THE STATE.

ELLINGTON, Justice.

A Gwinnett County jury found Amy McGarity guilty of murder and other crimes in connection with the death of Kayla Weil.[1] McGarity contends that the trial court erred in denying her motion

---

[1] On December 10, 2014, a Gwinnett County grand jury indicted McGarity and Cody Williams for malice murder, felony murder, aggravated assault, kidnapping, false imprisonment, and possession of a firearm during the commission of a felony in connection with the death of Weil. The grand jury also indicted McGarity and Cedric English for concealing the death of another. Williams pled guilty prior to trial. Following a joint trial, the jury found McGarity guilty on all counts on May 6, 2016. The appellate record is silent on the outcome of the case against English. On May 13, 2016, the court sentenced McGarity to life in prison without parole for malice murder; 20 years in prison for aggravated assault (concurrent with life sentence); ten years in prison for concealing the death of another (concurrent with life sentence); and five years in prison for possession of a firearm during the commission of a crime (consecutive to life sentence). The court merged the remaining counts. The State did not challenge at sentencing or in a cross-appeal whether the court erred in merging any of these offenses. See *Dixon v. State*, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017). Additionally, although the trial court purported to merge the felony murder count into the malice murder count, the felony murder count was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). On May 23, 2016, McGarity filed a motion for a new trial. She amended the motion on October 24, 2018. Following a hearing, the court denied the motion in an order filed January 15, 2019. McGarity filed a notice of appeal on February 13, 2019. This appeal was docketed to the term beginning in December 2019 and submitted for decision on the briefs.

for a new trial, arguing that the evidence was insufficient to support her conviction for murder and that the trial court erred in admitting evidence of her bad character. Because neither of these claims has merit, we affirm.

1. Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial shows the following. The victim, Weil, and her mother, Stacey Alicea, were drug users who became addicted to methamphetamine. To support her habit, Weil allegedly traded sex for drugs. Frank Wiley was one of the men with whom Weil had such a relationship. Wiley introduced Weil to other drug users, three of whom would later be indicted for crimes connected with her death: McGarity, Cody Williams, and Cedric English. Alicea also knew McGarity because Alicea bought drugs from her.

McGarity rented a house in Buford. English lived there with her. McGarity was a drug user and also a drug dealer, and her house was a popular hangout for other drug users. Drug users went to the house to buy and to use drugs, and to have sex in one of the house's two bedrooms. Alicea, Wiley, and Williams all testified that

McGarity had either sold or given them drugs. McGarity was known to be connected to a "mysterious" drug cartel that supplied "the good meth."

On July 17, 2013, Wiley and Weil drove to McGarity's house to hang out, use drugs, and have sex. Wiley testified that, when they arrived at McGarity's house, McGarity was there with English and Williams. Wiley was interested in having sex with Weil, but Weil took English into one of the bedrooms to have sex with him instead. Wiley remained in the living room and got high with McGarity and Williams. After Weil passed out in the bedroom, English returned to the living room and joined the group using drugs.

Wiley testified that, as Weil slept, McGarity angrily complained to the others that Weil had stolen from her. McGarity produced a black handgun that belonged to English, brandished it at the group, and began talking about kidnapping Weil. McGarity said she wanted to give Weil to the drug cartel to satisfy a debt that McGarity owed the cartel for drugs that it had advanced her to sell. When Williams said he wanted no part of such a scheme, McGarity

told him he could either help her or end up like Weil. McGarity then pointed the gun at Wiley and told him not to leave the house.

Williams testified that McGarity and English discussed the logistics of transporting Weil to the cartel. They decided that they first needed to restrain her. McGarity told Williams to bind Weil's hands with zip ties, and he complied. Weil was unconscious when Williams bound her hands and feet. When Williams returned to the living room, McGarity said that she wanted to kill Weil. English argued with McGarity about her desire to kill Weil instead of taking her to the cartel. During the argument, Williams heard the sound of a window breaking. He and McGarity went into the bedroom to investigate; English and Wiley stayed in the living room.

Weil, who had awoken, tried to break through a window to escape. Williams testified that, when he grabbed Weil to pull her away from the window, he noticed that she had broken some of the zip ties. Williams pushed Weil onto the bed, and McGarity repeatedly struck her on the forehead with the gun. From the living room, Wiley could hear McGarity shouting at Weil. Wiley also heard

what sounded like an object striking flesh. The repeated blows caused a large welt to form on Weil's head. When Weil lapsed into semi-consciousness, McGarity told Williams to carry Weil into the bathroom and put her in the tub. Williams testified that, at McGarity's direction, he also retrieved a computer cable from another room and gave it to her. Then, as Williams held Weil down, McGarity wrapped the cable around Weil's neck and strangled her. When he realized that Weil had died, Williams ran out of the bathroom. McGarity followed him a moment later.

Wiley, who had been sitting on the couch the whole time, testified to seeing Williams emerge from the bathroom first, followed by McGarity. Later, when Williams was out of earshot, McGarity told Wiley that Williams had broken Weil's neck. No one called the police. After a few minutes, McGarity and English carried Weil's body out of the house wrapped in blankets. They loaded the body into Williams' car and left the house. Later, McGarity told Williams that if he said anything to anyone about what had happened, he would become a "liability" and end up like Weil.

In August 2013, McGarity approached another drug-using friend, George Ramsey, to help her dispose of Williams' car. Ramsey testified that they "wiped down" the vehicle, inside and out, and left it in a grocery store parking lot. McGarity told Ramsey that "it was possible that [the car had been] used to transport a body." Sometime after that, McGarity briefly lived with Ramsey. Ramsey testified that he found McGarity in the back yard one day, sitting in a flower bed and crying. She told him that "[Weil] was dead and [it was] her fault."

Shortly after Labor Day, Alicea was released from prison on charges unrelated to Weil's death, and she started looking for her. She filed a missing person report and began asking friends where her daughter might be. One of the people Alicea contacted was McGarity. McGarity told Alicea that, from what she had heard, Weil had been "sold to the Mexicans" because Weil owed money to a drug cartel.

On October 24, 2013, a person who was helping clean up Chestnut Ridge Park near Lake Lanier Islands found a decomposed

body wrapped in blankets in one of the public restrooms. A forensic pathologist testified that, despite the female body's advanced state of decomposition, he was able to determine that the cause of death was ligature strangulation. He also testified that the ligature, a computer cable, was wrapped six times around her neck. He also found zip ties around her wrists and ankles. There was no evidence of a broken neck. It was uncontested at trial that the body was Weil's; the body was identified through DNA testing against a sample from Alicea.

Following leads provided by Alicea, investigators eventually spoke with Wiley. At about the same time, Wiley reached out to the Gwinnett County Police Department to "talk about an unsolved case." Wiley told the authorities about what McGarity and Williams had done. Investigators located Williams' car, and GBI forensic experts analyzed hair and fibers recovered from the back seat and trunk of the car. Hair samples recovered from the car matched Weil's hair, and fibers from the inside of the vehicle matched those found on the blankets wrapped around her body.

McGarity argues that the evidence presented at trial was not sufficient to prove malice murder beyond a reasonable doubt, arguing that the evidence shows only her mere presence and that the only evidence implicating her in the murder was the uncorroborated and self-serving testimony of co-defendant Williams, who agreed to testify against her in order to receive a life sentence instead of life without parole for his role in Weil's murder.

McGarity is correct in asserting that Williams was an accomplice in the crimes, and in order to sustain a felony conviction under Georgia law, testimony by an accomplice to a crime must be corroborated by other evidence implicating the defendant. See OCGA § 24-14-8.[2] However,

> [c]orroborating evidence may be slight, and may be entirely circumstantial. The evidence need not be sufficient in and of itself to warrant a conviction, so long as it is independent of the accomplice's testimony and

---

[2] That Code section provides:

The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including prosecutions for treason, prosecutions for perjury, and felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason.

directly connects the defendant to the crime or leads to the inference of guilt. Evidence of the defendant's conduct before and after the crime was committed may give rise to an inference that [she] participated in the crime. Once the State has introduced independent evidence implicating the defendant, it is for the jury to decide whether the accomplice's testimony has been sufficiently corroborated.

(Citations and punctuation omitted.) *Mangram v. State*, 304 Ga. 213, 216 (II) (817 SE2d 682) (2018).

In this case, sufficient independent evidence corroborates Williams' testimony that McGarity killed Weil by strangling her. Moreover, even if McGarity did not strangle Weil to death herself, the evidence was sufficient to corroborate Williams' testimony concerning McGarity's participation in the crimes.[3] The forensic evidence showed that Weil had been strangled with a computer cable but that her neck was not broken, which corroborates Williams' testimony about how Weil had died. And even though

---

[3] The trial court charged the jury on the law concerning mere presence, mere association, and parties to a crime, instructing the jury that it was not authorized to find McGarity guilty "unless the evidence shows, beyond a reasonable doubt, that such person committed the alleged crime, helped in the actual perpetration of the crime, or participated in the criminal endeavor."

Wiley testified that McGarity told him that Williams had broken Weil's neck, the jury could infer from this evidence that McGarity had lied to Wiley about Weil's cause of death to avoid responsibility for killing Weil.

Additionally, Wiley testified that Williams was acting at McGarity's direction. Wiley testified that McGarity wanted to kidnap Weil and sell her to the cartel to satisfy a drug debt, that she was angry with Weil for stealing from her, and that she had expressed a desire to kill Weil shortly before Weil was killed. Wiley heard McGarity shouting at Weil when Weil, who was bound with zip ties, tried to escape from McGarity's home through a window. Also, based on the testimony of Wiley and Ramsey, the jury was authorized to find that McGarity participated in disposing of the body and of the car used to transport the body. According to Ramsey, McGarity later expressed remorse about Weil's death, admitting that it had been her fault. This evidence was sufficient to corroborate Williams' testimony about McGarity's participation in the crimes. See *Mangram*, 304 Ga. at 216 (II).

Finally, the evidence presented at trial and summarized above was sufficient as a matter of constitutional due process to authorize a rational jury to find McGarity guilty beyond a reasonable doubt of the crimes of which she was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It [is] for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)).

2. McGarity contends that the trial court abused its discretion in allowing into evidence testimony from Williams and Alicea concerning McGarity's connection to a drug cartel and her involvement in drug dealing and drug use. "We review a trial court's evidentiary rulings under an abuse of discretion standard of review." (Citation and punctuation omitted.) *Venturino v. State*, 306 Ga. 391, 393 (2) (830 SE2d 110) (2019). McGarity argues that the testimony was improper character evidence and that its admission was substantially more prejudicial than probative. For the following

reasons, the trial court did not abuse its discretion in admitting this testimony as intrinsic evidence. As we have explained:

> Evidence is admissible as intrinsic evidence when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense. Intrinsic evidence must also satisfy [OCGA § 24-4-403].
>
> In applying these factors, . . . evidence pertaining to the chain of events explaining the context, motive, and set-up of the crime is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury. [E]vidence of other acts is inextricably intertwined with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted. And this sort of intrinsic evidence remains admissible even if it incidentally places the defendant's character at issue.

(Citations and punctuation omitted.) *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017).

In this case, evidence of McGarity's drug use and dealing as well as her connection to a drug cartel is inextricably intertwined with the story of Weil's murder. Alicea's and Williams' testimony

explained the relationship between the parties, that is, that they were all connected by their drug use and that McGarity was their supplier, providing them with "the good meth" as well as a place to use the drugs. The crimes occurred while the co-defendants and a witness were using drugs at McGarity's home and after Weil had passed out from her drug use. McGarity announced to everyone present that she wanted to kidnap Weil and deliver her to a drug cartel to satisfy a debt that McGarity owed the cartel for drugs that it had advanced her. Williams tied up Weil in furtherance of that plan. Thus, evidence of McGarity's drug use and connection to a drug cartel was an integral and natural part of the witnesses' accounts of the circumstances surrounding Weil's murder as well as McGarity's motivation for her actions. Although this evidence incidentally placed McGarity's character at issue, its probative value was not substantially outweighed by the danger of unfair prejudice. Consequently, the trial court did not abuse its discretion in admitting it. See *Williams*, 302 Ga. at 485-487 (IV) (d).

*Judgment affirmed. Melton, C. J., Nahmias, P. J., and*

*Blackwell, Boggs, Peterson, Warren, and Bethel, JJ., concur.*

DECIDED APRIL 6, 2020.
Murder. Gwinnett Superior Court. Before Judge Batchelor.

*Brown & Gill, Angela B. Dillon*, for appellant.

*Daniel J. Porter, District Attorney, Lee F. Tittsworth, Samuel R. d'Entremont, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.