**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 29, 2022**

# In the Court of Appeals of Georgia

A22A0320. BROOKS v. THE STATE.

PER CURIAM.

Following his conviction for aggravated assault,[1] Deras Deonta Brooks appeals, contending that the evidence was insufficient to support the jury's verdict. Specifically, Brooks argues that the evidence failed to show that he used an automobile as a deadly weapon during an aggravated assault of the victim, P. B., whom Brooks dragged by the hair alongside the car as it moved forward. We disagree and affirm.

---

[1] OCGA § 16-5-21 (a) (2) ("A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."). Brooks was indicted for "an assault upon the person of [P. B.] with a motor vehicle, an object, device, and instrument which when used offensively against a person is likely to result in serious bodily injury."

When considering the sufficiency of the evidence as a matter of constitutional due process, an appellate court must view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] Any conflicts in the evidence are resolved by the trier of fact, not this Court.[3]

Viewed in this light, the evidence produced at trial shows that in the spring of 2017, Brooks and P. B. were dating. That summer, P. B. told Brooks that she "needed space," but Brooks continued to contact her and often walked past her home. In September 2017, P. B. spent the night at Brooks's apartment, and when she tried to leave the next morning, Brooks forced her out of her car, grabbed her head, and banged it against the trunk of the car. . Brooks then dragged P. B. back to his apartment by grabbing her hair extensions.

Approximately one week later, Brooks showed up uninvited at P. B.'s school and approached her with flowers. P. B. initially rejected the flowers, but ultimately accepted them and talked to Brooks in order to defuse the situation. Brooks then told

---

[2] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also OCGA § 16-5-21 (a) (2).

[3] See *Walker v. State*, 296 Ga. 161, 163 (1) (766 SE2d 28) (2014).

P. B. that he was going to need a ride home from her. P. B. refused and then went back to class.

When P. B. was done with school for the day, an instructor escorted her to her car, and, as they walked, P. B. could see Brooks standing near the side of the school. P. B. got into her car before the teacher went back inside, and she started to drive. Brooks chased her, and he caught up with her car in a line of traffic at a stop sign. Brooks jumped on top of the hood to stop P. B. P. B. told Brooks to get off her car, leave her alone, and go home, but Brooks told P. B. that he wanted a phone charger he had left in her car. P. B. cracked open her window and pushed the charger through to Brooks, but Brooks grabbed the car window and struck it with his hand, shattering the glass. Brooks then leaned into the car and began striking P. B.'s head. P. B. tried to drive away, but Brooks "planted his body" into the car while grabbing P. B.'s head and banging it against the steering wheel. P. B. then momentarily lost consciousness.

When she recovered her senses, P. B. found herself in the passenger seat of the car. Brooks was driving and swerving all over the road. Though Brooks attempted to stop her, P. B. was eventually able to unlock the passenger door, and she tried to jump out of the moving car and escape. Brooks reached over and grabbed her by her hair extensions and held onto them, dragging P. B. alongside the car as it continued to

3

move forward. As the moving car dragged P. B., the pavement caused abrasions across her back and buttocks. P. B. also suffered a concussion and a sprained toe, and some of her hair was pulled out. P. B. testified that Brooks only let her go when her screams seemed to attract too much attention. P. B. then ran away, and the car rolled into a curb, where it stopped. Brooks fled the scene, but was later apprehended.[4]

This evidence was sufficient to support Brooks's conviction for aggravated assault.[5] Nonetheless, Brooks contends that the State failed to prove that he used the car as a deadly weapon in an offensive manner. This contention is misplaced.

"[C]entral to the offense of aggravated assault is that an assault as defined in OCGA § 16-5-20 be committed on the victim."[6] Under OCGA § 16-5-20 (a), there are two ways to commit an assault: when a person "(1) [a]ttempts to commit a violent

---

[4] Two other drivers witnessed this series of events and testified at trial. One of the witnesses saw P. B. being dragged by the car and testified that P. B. appeared to be terrified.

[5] See *Jackson*, 443 U. S. at 319 (III) (B).

[6] *Brinson v. State*, 272 Ga. 345, 347 (1) (529 SE2d 129) (2000).

4

injury to the person of another; or (2) [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury."[7] Furthermore,

> [u]nder OCGA § 16-5-21 (a) (2), a person commits the offense of aggravated assault when [he] assaults another with a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. Although an automobile is not a deadly weapon *per se*, it may become one depending upon the manner in which it is used. The question of whether an automobile has been used in such a manner so that it constitutes a deadly or offensive weapon is a matter for the factfinder's determination.[8]

Here, the evidence showed that while P. B. attempted to exit the car, Brooks grabbed her hair and held it while the moving car dragged her with it.[9] In fact, the

---

[7] The indictment in this case did not specify the manner of assault, and the jury was instructed as to both.

[8] (Footnote and punctuation omitted.) *Frayall v. State*, 259 Ga. App. 286, 287 (1) (576 SE2d 654) (2003). See also *White v. State*, 287 Ga. 713, 724 (4) n.7 (699 SE2d 291) (2010) (noting that "[w]hen the weapons involved are not deadly weapons *per se*, whether the weapons used by the combatants constitute deadly weapons is for the jury to determine" and citing to *Simmons v. State*, 172 Ga. App. 695, 696 (1) (324 SE2d 546) (1984), for the proposition that, "depending on the manner and means of the use of a motor vehicle, [the] jury could decide it was a deadly weapon").

[9] Though Brooks argues in his appellate brief that he grabbed P. B.'s hair because he was trying to prevent her from jumping out and hurting herself, Brooks did not testify at trial and presented no evidence of this belief. Even if he had done so, however, the jury would have been authorized to disbelieve him. See *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the

evidence shows that P. B. was dragged at least 3 to 5 feet before Brooks released her. Under this specific set of facts, the jury could conclude that Brooks intentionally used the moving car as an instrument to drag P. B. along the pavement, thereby inflicting serious injuries. Concomitantly, the jury was authorized to conclude that, based on this manner of use, the vehicle was an "object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury" and that Brooks was guilty of aggravated assault.[10]

Brooks's argument that he cannot be guilty because he did not use the vehicle offensively to drive toward P. B. or strike her, as has occurred in prior cases that he cites,[11] does not require reversal. While the cases cited by Brooks did determine that

_____

evidence.") (punctuation omitted).

[10] See, e.g., *Frayall*, 259 Ga. App. at 287-288 (1) (holding that defendant committed aggravated assault by driving car forward while police officer "was only halfway inside the car"). Brooks attempts to distinguish *Frayall* and similar cases by arguing that the responding police officer was trying to enter the car while the defendant drove it forward rather than exit the moving car as P. B. did in this case. But the victim's decision to enter or exit the vehicle is not the decisive factor. The defendant's decision to use the vehicle in an offensive manner against the victim controls, and, here, Brooks used the car to drag P. B. against the pavement.

[11] For example, Brooks cites, among other cases, *Patterson v. State*, 299 Ga. 491 (789 SE2d 175) (2016); *Scott v. State*, 268 Ga. App. 889, 890 (b) (602 SE2d 893) (2004); *Williams v. State*, 270 Ga. App. 371 (1) (606 SE2d 594) (2004); and *Myers v. State*, 311 Ga. App. 668, 669 (1) (716 SE2d 772) (2011).

a car could be a deadly weapon when used to drive at someone or hit them, they do not stand for the proposition that such a fact scenario is the only one in which a car could be considered a deadly weapon.

*Judgment affirmed. Division Per Curiam. All Judges concur*.