151 Ga. App. 662 (1979)
261 S.E.2d 413
P. D.
v.
STATE OF GEORGIA.
58120.
Court of Appeals of Georgia.
Argued July 2, 1979.
Decided October 9, 1979.
Loring A. Gray, Jr., for appellant.
Robert E. Baynard, for appellee.
CARLEY, Judge.
A petition was filed in juvenile court alleging that appellant had committed simple battery, a "delinquent act" under Code Ann. § 24A-401 (e) (2). After a hearing, appellant was found to be in a state of delinquency and *663 committed to the Department of Human Resources. He appeals the trial court's adjudication of delinquency.
1. The general grounds are enumerated as error. There was before the court extensive testimony describing graphically that appellant administered two or three blows to the face of the victim, the force of each knocking the victim from her feet. The actions of the appellant resulted in a fracture of two portions of the victim's jaw, necessitating that she undergo two separate surgical procedures and that she receive professional post-operative care and treatment. Appellant concedes "there can be no question as to whether or not the appellant did, in fact, `intentionally cause physical harm to another,' as required by the definition of the offense as contained in Georgia Code Annotated 26-1304..." He argues, however, that the evidence demanded a finding that his actions were justified as being in self-defense. There is little doubt that the evidence demonstrates that the victim neither acted nor reacted as a young lady should. However, the version of the evidence which the juvenile court judge, as trier of fact, was authorized to believe affords no justification for the conduct of appellant under Code Ann. § 26-902. Baker v. State, 230 Ga. 741 (199 SE2d 252) (1973). After a review of the entire record, we find that a rational trier of fact could reasonably have found, from the evidence adduced at the hearing, proof beyond a reasonable doubt that appellant committed the acts by reason of which he was alleged to be delinquent. Code Ann. § 24A-2201 (b). Jackson v. Virginia,  U. S.  (99 SC 2781, 61 LE2d 560) (1979).
2. Appellant argues that the court erred in failing to allow testimony as to the character of the victim for violence and turbulence. The question to which the objection was made and sustained was "Did you ever see [the victim] get hit by anyone else or hit anyone else?" Assuming that evidence of the young victim's character and reputation for violence would be otherwise admissible, testimony concerning specific acts would be impermissible. Black v. State, 230 Ga. 614 (198 SE2d 314) (1973).
3. The court did not permit a witness to answer the following question concerning the incident: "Who was the *664 aggressor?" It is urged that the question was proper and that disallowing an answer was error. This question, in effect, called for the witness to state his conclusion as to whether there was any provocation or justification for the underlying events. These were matters which could be determined only by the trier of fact. There was no error. Rooker v. State, 211 Ga. 361 (1) (86 SE2d 307) (1955).
4. At the close of the state's evidence the following colloquy occurred:
Appellant's counsel: "Your Honor, would it do any good to move for a directed verdict or judgment at this time?" The Court: "No, sir, I don't think it would." Appellant's counsel: "O.K. I won't mention it ... I'll save it."
It is argued that the court erred in "refusing to consider or allow Appellant's Motion for Directed Verdict." It is readily seen that the court did not prohibit or disallow appellant from making his "motion"  he decided to "save it." There being no motion articulated, there was nothing for the court to "refuse to consider." Furthermore, even if counsel's initial statement be construed as a "motion," the court's response must likewise be construed as a denial of that motion. Denial of such a motion would be proper, there being sufficient evidence at that point to authorize a finding that appellant had committed the acts by reason of which he was alleged to be delinquent. There was no error for any reason urged.
5. On cross examination, a witness for appellant was asked if he were a "friend" of the appellant  "better friends" with the appellant than with the victim. The witness answered that he was. The state contends and appellant concedes that such testimony was permissible to show the witness' feelings toward and relationship with the parties. Code Ann. § 38-1712. However on redirect, the witness was asked "Your friendship with [appellant] would not cause you to slant your testimony for him, would it?" The court's refusal to allow the witness to respond to this question is enumerated as error.
Appellant argues that, after the state had established the witness was "better friends" with appellant than with the victim, he should have been *665 allowed to rehabilitate the credibility of the witness by having the question answered. The witness had been sworn. The question propounded to him asked, in effect, whether he could be believed on his oath. In short, the question sought to have the witness sustain himself by testifying as to his own veracity. This was improper and disallowing a response was not error. "Until the adverse party attacks the credibility of a witness, either for bad character or because of contradictory statements, the party calling him can not introduce evidence in support of his character for veracity... " Anderson v. Southern R. Co., 107 Ga. 500 (33 SE 644) (1899) (Emphasis supplied.); Duncan v. State, 58 Ga. App. 551 (1) (199 SE 319) (1938); and cits. Here, the state did not seek, in its cross examination of the witness, to impeach him by showing contradictory statements (Code Ann. § 38-1803) or by showing his general bad character (Code Ann. § 38-1804). It sought to show the witness' relationship to the parties "for the consideration of the [trier of fact]" under Code Ann. § 38-1712. There being no evidence before the court which attacked the witness for appellant either for bad character or for contradictory statements, it was not error for the court to refuse to allow the appellant's witness to testify as to his own character for veracity. Cf. Vernon v. State, 49 Ga. App. 187, 191 (174 SE 548) (1934). Furthermore, we note that the question to which the objection was sustained was leading in nature and, therefore, was not properly propounded on redirect examination of appellant's own witness. Code Ann. § 38-1706.
6. Appellant cites as error the court's refusal to allow a witness to testify as to appellant's "good character." However, the transcript reveals that when this witness, appellant's scoutmaster, was called, the court asked counsel whether he was "going into character with this witness," to which the response was: "I don't know if it's so much character, as it is temperament. This witness has had an opportunity to observe the defendant." Appellant's counsel neither propounded nor proposed the standard questions with regard to appellant's general reputation in the community. We know of no authority holding that a witness' opinion as to a defendant's "temperament" is *666 admissible as evidence of good character in a criminal prosecution. "A person's character is not to be proved by asking a witness what kind of a man that person is. The word `character,' as used in legal parlance, is equivalent in meaning to the word `reputation,' as used in more precise diction." Peacock v. State, 10 Ga. App. 402 (1) (73 SE 404) (1912).
Furthermore, the trial court observed that the proper time for such testimony would be during the dispositional hearing to follow the adjudicatory hearing if appellant were found to be delinquent. The witness did, in fact, testify at that time. Review of the transcript demonstrates that this testimony was more properly presented and received at that point than when offered originally at the adjudicatory hearing. There was no error.
7. Appellant requested that the judge who had presided at the hearing disqualify himself for bias and prejudice from hearing the motion for new trial. The request was denied. Appellant's argument that this was error must fail in view of Code Ann. § 24-102. "This Code section does not provide that bias or prejudice is a ground to disqualify [a trial judge] from presiding in the case. The statutory grounds of disqualification contained in this section are exhaustive. [Cit.] `Alleged prejudice or bias of a judge, which is not based on an interest either pecuniary or relationship to a party within a prohibited degree, affords no legal ground of disqualification.' [Cits.]" Jones v. State, 219 Ga. 848, 849 (136 SE2d 358) (1964).
Judgment affirmed. Quillian, P. J., McMurray, P. J., Smith, Banke and Underwood, JJ., concur. Deen, C. J., Birdsong and Shulman, JJ., dissent.
DEEN, Chief Judge, dissenting.
I am constrained to dissent from the second and sixth divisions of the majority opinion. The purpose of legislation setting up juvenile courts is not primarily to *667 punish for crime but to "provide a solution for the youngster and his family aimed at making the child a secure law-abiding member of society." D. C. A. v. State of Ga., 135 Ga. App. 234, 238 (2) (217 SE2d 470) (1975). I hesitate to characterize the prior actions of the victim in this case as "temperament" rather than "character" if it results in leaving out of the evidence those facts which might explain the beginning of the difficulty that ended in this fight and the adjudication which followed. The defendant's character is a substantive fact and may of itself be sufficient to generate a reasonable doubt of guilt and thereby authorize a judgment of acquittal. Shropshire v. State, 81 Ga. 589, 591 (8 SE 450) (1888); Life Ins. Co. v. Lawler, 211 Ga. 246, 251 (85 SE2d 1) (1954); Julian v. State, 134 Ga. App. 592, 597 (215 SE2d 496) (1977). In the present case the judge refused evidence of the defendant's good character and peaceable disposition. He also refused testimony of the victim's character for violence and turbulence. The facts of this case are basically uncontested (a name calling contest escalated into a fight and the defendant, a boy, hit the victim, a girl, too hard, so that she fell to the ground and broke her jaw). But eyewitnesses agreed in substance that the first obscenities were uttered by the girl, the attack was hers, the "follow-up" aggressive behavior was hers, the blows were struck only after the defendant was kicked in the groin by her, and she had announced in advance that this was what she intended to do. The various rulings throughout the adjudication hearing completely abolished the defense that the defendant, although he hit too hard, did in fact hit in self-defense. Some of the testimony clearly suggests that the little girl was very "street wise" and the boy was untutored in the niceties of a gutter fight. It should be noted that the defendant, according to most witnesses, backed off more than once and was followed by his victim, who also made the first physical contact. To my mind it is a close question as to who was the true aggressor, and this seems to be a view of the case which the juvenile judge completely ignored.
In my opinion this is exactly the sort of thing that separates juvenile hearings from criminal trials, and evidence of motivation is extremely important in deciding *668 the degree of culpability of such immature minds. This child may well have acted in fear rather than in anger; in fact, his first act on realizing the girl was truly hurt was to go up to her and say that he was sorry. Even in murder trials evidence of the violent and turbulent character of the victim is admissible. Henderson v. State, 234 Ga. 827, 829 (218 SE2d 612) (1975); Curtis v. State, 241 Ga. 125, 126 (243 SE2d 859) (1978). It should be allowed not only in the dispositional but in the adjudication hearing as well.
I am authorized to state that Judge Shulman joins in this dissent.
BIRDSONG, Judge, dissenting.
Admittedly being influenced to some degree by the experience of having been a juvenile judge for eighteen years, but more importantly by the fact that these proceedings deal with persons of immaturity whose youth society protects by an enlightened and expansively protective cloak, it is my opinion that for the best interest of the child involved and for society in general, a wide latitude should be exercised by a judge at a juvenile hearing. All facts which are pertinent to the well being of the child and society should be allowed and considered. It is my firm conviction that the juvenile court should not only be a court of punishment, but also a court of help for young people in trouble.
I therefore conclude that the case should be remanded and all which could aid the court in the adjucation phase, as set forth in Chief Judge Deen's dissenting opinion, should be heard and only then a decision of adjudication rendered.
I am authorized to state that Chief Judge Deen and Judge Shulman join in this dissent.