## A06A1678. IN THE INTEREST OF E. J., a child.
### (642 SE2d 179)

BERNES, Judge.

E. J., a 13-year-old juvenile, appeals an adjudication of delinquency based on her commission of a battery upon a schoolmate. E. J. argues that the evidence was insufficient to support the adjudication and that the trial court erred by failing to enforce discovery, by failing to remedy an alleged *Brady* violation, and in limiting closing arguments to five minutes. We find no error and affirm.

1. In her first enumeration of error, E. J. challenges the sufficiency of the evidence supporting the trial court's adjudication of her delinquency.

> In considering a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we construe the evidence and every inference from the evidence in favor of the juvenile court's adjudication to determine if a reasonable finder of fact could have found, beyond a reasonable doubt, that the juvenile[ ] committed the acts charged. An appellate court does not determine the weight of the evidence or determine the credibility of witnesses, but only determines whether the evidence is sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt.

(Citations and footnotes omitted.) *In the Interest of W. B.*, 255 Ga. App. 192 (564 SE2d 816) (2002). See also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence adduced at the hearing shows that the battery arose out of a school bus fight involving E. J., her friend, and the victim, A. T., all of whom were schoolmates. One morning as the victim was boarding the school bus, E. J.'s foster brother, C. B., teased the victim about his mother having kissed and hugged him before he got on the school bus. The victim's mother heard the teasing and retorted, "Well[,] at least he has one to give him one," referring to C. B.'s foster care status. The victim also retorted, "and mine is my first!"

E. J. heard about the comments, confronted the victim and slapped him. E. J.'s friend joined in and hit the victim in his face with her purse. After E. J. learned that the victim stated that he would fight back if he was hit again, E. J. struck the victim again on his head and pulled his hair. A melee ensued in which the victim kicked E. J., and E. J. then repeatedly struck the victim about his head as he lay on the school bus floor. The victim sustained a bloody nose, a bruise above his eye, and a raised bruise on his forehead. This evidence was sufficient to authorize E. J.'s adjudication of delinquency for the

offense of battery.[1] OCGA § 16-5-23.1 (a); *Glaze v. State*, 253 Ga. App. 349, 350-351 (559 SE2d 90) (2002); *Babb v. State*, 252 Ga. App. 518, 520 (5) (556 SE2d 562) (2001).

Although E. J. points to conflicting evidence as to whether or to what extent E. J.'s actions caused the victim's injuries, "the trier of fact resolved that issue against [E. J.] and this court will not substitute its judgment for that of the trier of fact." (Citation and punctuation omitted.) *In the Interest of A. C.*, 226 Ga. App. 369, 370 (486 SE2d 646) (1997). Nor will we substitute our judgment on the issue of justification. E. J. argues that her actions were justified as a response to the victim's opprobrious comments regarding foster care and as self-defense based on the victim's attack upon her. However, "the version of the evidence which the juvenile court judge, as the trier of fact, was authorized to believe affords no justification for the conduct of [E. J.]" (Citation omitted.) *P. D. v. State of Ga.*, 151 Ga. App. 662, 663 (1) (261 SE2d 413) (1979). "It was for the trier of fact to determine whether the battery in this case was justified . . . and the trial court apparently found that it was not." (Citations omitted.) *In the Interest of A. C.*, 226 Ga. App. at 370.

2. E. J. next contends that the trial court erred in failing to enforce the discovery provisions of OCGA § 15-11-75 (a) (7) and in failing to remedy a *Brady* violation, which allegedly occurred as a result of the state's failure to provide a school bus videotape recording from the day the incident occurred. We find no error.

The record reflects that prior to the start of trial, E. J.'s counsel complained that she had not received the school bus videotape pursuant to her discovery request. The prosecutor explained that the tape was not in his custody, but rather was in possession of the school. Another juvenile court official stated that he had learned from a school resource officer that no tape existed. At the request of the trial court, the school resource officer, who had been subpoenaed as a defense witness, testified that she had

> watched the entire videotape, but there's nothing on it. We've had previously problems with this bus recordings not — whether it's the tape that's defective or the camera defective, I can't tell you, but the tape is — it's black pretty much the whole way through. . . . There's nothing. There's no audible. There's nothing.

---

[1] "A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another." OCGA § 16-5-23.1 (a). "[T]he term 'visible bodily harm' means bodily harm capable of being perceived by a person other than the victim and may include, but is not limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts." OCGA § 16-5-23.1 (b).

In response to the trial court's inquiry, the officer confirmed that the tape did not "show anything whatsoever about this incident."

Even though the trial court noted that the "State doesn't have to go out and get something that belongs to a third party that's not a State employee or agency," and that the defense could have subpoenaed the videotape, it nevertheless granted a two-hour and fifteen-minute recess to allow defense counsel to review the videotape. When the hearing reconvened, defense counsel announced that she had not had enough time to review the entire videotape, but conceded that there was only "snow" and no depiction of images in the 40-minute portion of the videotape that she had thus far reviewed. The trial court denied defense counsel's request for a further continuance, ruling that the state did not have a duty to produce the videotape since it was not in its possession.

OCGA § 15-11-75 (a) (7) provides:

> In all cases in which a child is charged with having committed a delinquent act as defined in Code Section 15-11-2, the child shall, upon written request to *the person or entity prosecuting the case having actual custody, control, or possession of the material to be produced,* have full access to [photographs and any physical evidence which are intended to be introduced at the hearing] for inspection, copying, or photographing.

(Emphasis supplied.) Since the state did not have *actual* possession of the videotape and further because it did not intend to introduce the videotape into evidence at trial, it was not under any obligation to produce the videotape pursuant to E. J.'s discovery request.[2] Compare OCGA §§ 17-16-1 (1) and 17-16-4 (a) (3), requiring the state to produce in criminal prosecutions certain items which are "within the possession, custody, or control of the prosecuting attorney or any law enforcement agency involved in the investigation of the case being prosecuted."

Moreover, E. J. has failed to show that the prosecution was under any obligation to produce the videotape pursuant to the dictates of *Brady v. Maryland,* 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). "The prosecution, upon a *Brady* motion, has the duty to produce anything that is exculpatory or impeaching." *Bailey v. State,* 229 Ga. App. 869, 873 (3) (494 SE2d 672) (1997).

---

[2] The prosecution was instituted at the behest of the victim's parents, who filed a complaint in juvenile court.

Fundamental to any error based upon a violation of *Brady* is that appellant must prove that: (1) *the state possessed evidence favorable to the defense*, i.e., true *Brady* material; (2) the defense did not possess the evidence, nor could she obtain it herself with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; (4) she was denied access to such evidence during trial; (5) the disclosure would have *benefitted* the defense by providing evidence for the defense or impeaching prior inconsistent statements; and (6) the denial deprived her of a fair trial, i.e., a reasonable probability exists that the outcome of the proceedings would have been different had disclosure been made.

(Citations omitted; emphasis in original and supplied.) Id. at 874 (3).

E. J.'s claim here fails for several reasons: the videotape was not in the custody and control of the state; E. J. could have obtained the evidence had she simply subpoenaed it prior to trial; and significantly, the unrebutted evidence of record establishes that the videotape lacked any exculpatory or evidentiary value. Any assertion to the contrary is mere speculation. *Merritt v. State*, 248 Ga. App. 709, 713 (3) (548 SE2d 427) (2001).

3. Finally, E. J. contends that the trial court erred in limiting her closing argument to five minutes. OCGA § 17-8-72 provides that the closing arguments in misdemeanor cases and cases brought up from inferior judicatories are limited to one-half hour. Prior to the closing arguments in this case, the trial court informed the parties that they would each have five minutes to argue. Despite having notice that the closing arguments would be limited to five minutes rather than one-half hour, "[d]efense counsel did not insist upon [her] right to the full time; instead, [she] remained silent. Thus, defense counsel acquiesced in the court's ruling and waived this issue on appeal." (Citations omitted.) *Agee v. State*, 279 Ga. 774, 775 (2) (621 SE2d 434) (2005).

*Judgment affirmed. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED FEBRUARY 9, 2007 —
RECONSIDERATION DENIED FEBRUARY 21, 2007.

*Sherri J. Jefferson*, for appellant.
*Stephen D. Kelley, District Attorney, W. Franklin Aspinwall, Jr., Assistant District Attorney*, for appellee.