## S09A0023. VEGA v. THE STATE.

(673 SE2d 223)

CARLEY, Justice.

After a jury trial, Tito Flores Vega was found guilty of the felony murder of Sammy Avilla during the commission of arson in the first degree. The trial court entered judgment of conviction and sentenced Vega to life imprisonment. The trial court denied a motion for new trial, and Vega appeals.[*]

1. Vega contends that the trial court erred in denying a motion for directed verdict. Construed most strongly in support of the jury's verdict, the evidence shows that Carlos Maye saw a fire in an abandoned building as he drove by. He turned around, stopped, and observed Vega tossing several tires onto the fire while it continued to grow larger. After being restrained by Maye, Vega said that somebody died and told another person that someone was inside the building. Subsequent to his arrest, Vega admitted his involvement to two other inmates. The victim's body was discovered in the building, and the cause of the fire was determined to be arson. The victim's death was caused by smoke inhalation and thermal injury.

Vega argues that the evidence fails to show that he deliberately or intentionally set the fire, or that he had ignitable materials with him. He relies on evidence that a man matching the description of Jesse Padilla, who was an acquaintance of the victim and was known as a troublemaker, left the burning building and subsequently told people that the victim was burned. However, a "person commits the offense of arson in the first degree when, by means of fire or explosive, he or she knowingly damages or knowingly causes, aids, abets, advises, encourages, hires, counsels, or procures another to damage" specified property under certain circumstances. OCGA § 16-7-60 (a). That statute does not require that the accused personally set the fire or possess ignitable materials. The evidence is sufficient where, as here, the defendant knowingly damages or knowingly aids or abets another to damage property by adding fuel to a fire. Although Vega further relies on evidence that tires do not catch fire easily and that an attempt to use the tires to smother the fire could inadvertently worsen it, there was not any evidence that Vega was trying to put out the fire. Indeed, he never made that claim when Maye asked him what he was doing or when he was talking to

---

[*] The homicide occurred on January 22, 2006, and the grand jury returned an indictment on April 12, 2006. The jury found Vega guilty on May 10, 2007. The trial court entered judgment on May 14, 2007 and, on the same day, Vega filed the motion for new trial. That motion was amended on September 10, 2007, and denied on October 3, 2007. Vega filed the notice of appeal on October 16, 2007. The case was docketed in this Court on September 4, 2008, and submitted for decision on October 27, 2008.

another person on the scene. Furthermore, the evidence shows that the fire continued to grow larger as Vega tossed the tires on it.

The particular subsection of the arson statute which Vega was charged with violating requires that the defendant's acts take place "under such circumstances that it is reasonably foreseeable that human life might be endangered." OCGA § 16-7-60 (a) (5). Vega claims that, even if he had knowingly damaged the building by means of fire, he would not have had any way of knowing that he was endangering human life, because the building was abandoned, and the victim, who was in a small bedroom area, was so intoxicated that he was likely unconscious. To the contrary, the evidence shows that Vega had actual knowledge that he was endangering human life. Vega's statements immediately after adding fuel to the fire and upon being restrained outside the building indicate that he knew that someone else was still in the building and probably died in the fire.

Vega further asserts that part of the inmates' testimony was contradicted by the medical examiner's testimony. However, " '[t]his Court does not reweigh evidence or resolve conflicts in testimony .... [Cit.]' [Cit.] .... It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence. [Cits.]" *Mickens v. State*, 277 Ga. 627-629 (593 SE2d 350) (2004). Viewed in the light most favorable to the verdict, the evidence was sufficient for a rational trier of fact to find Vega guilty of felony murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Green v. State*, 283 Ga. 126, 129 (1) (657 SE2d 221) (2008); *Funderburk v. State*, 276 Ga. 554, 555 (1) (580 SE2d 234) (2003); *Crumbley v. State*, 267 Ga. 354 (1) (478 SE2d 132) (1996).

2. Vega also contends that he was denied the right to a fair trial because of the State's failure to comply with the discovery requirements of OCGA § 17-16-4 (a) (1) and *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963) with respect to the videotaped interviews of Maye and of Vega himself.

Several months prior to trial, the prosecutor notified defense counsel that the videotaped interview of Maye did not have any sound and would only be provided upon express request. The interview of Vega was on the same tape, and examination of the original tape revealed that there was no sound for either interview. Vega's attorney raised the issue about two weeks before trial, while the prosecutor was on leave, and the soundless recording was provided on the Friday preceding the beginning of trial on Monday morning.

Vega has failed to show that *Brady* required the prosecutor to produce the videotape. " 'The prosecution, upon a *Brady* motion, has the duty to produce anything that is exculpatory or impeaching.'

[Cit.]" *In the Interest of E. J.*, 283 Ga. App. 648, 650 (2) (642 SE2d 179) (2007). The record establishes that the completely inaudible "videotape lacked any exculpatory or evidentiary value. Any assertion to the contrary is mere speculation. [Cit.]" *In the Interest of E. J.*, supra at 651 (2). Moreover, due to the lack of sound, Vega has also failed to show how earlier disclosure of the videotape "would have benefited him or how any delay harmed him. . . . [Thus,] [t]his case falls within the rule that ' "*Brady* is not violated when the (purported) *Brady* material is available to defendants during trial. (Cits.)" (Cit.) . . .' [Cit.]" *Jordan v. State*, 217 Ga. App. 420, 422 (1) (457 SE2d 692) (1995).

OCGA § 17-16-4 (a) (1) requires, in pertinent part, that the prosecutor make available to the defendant, no later than ten days before trial, "any relevant . . . recorded statements made by the defendant . . . ." Vega has failed to show how the soundless videotape can be deemed a "relevant . . . recorded statement." The trial court correctly stated that "[i]t is unfair to characterize the failure of the recording device as a discovery violation."

Even if OCGA § 17-6-4 (a) (1) was violated, the trial court clearly did not abuse its broad discretion under OCGA § 17-16-6 to determine an appropriate remedy under the circumstances of this case. See *Price v. State*, 240 Ga. App. 37, 40 (3) (522 SE2d 543) (1999); *Rooks v. State*, 238 Ga. App. 177, 178 (1) (518 SE2d 179) (1999). The only remedy requested by defense counsel was a "short continuance," the trial court allowed an extended lunch break for counsel to tailor his opening statement to the new information, and counsel simply thanked the trial court and never renewed his request for a continuance. Because Vega did not renew the request after the trial court announced its remedy, we must assume that he was satisfied with that remedy. *Chung v. State*, 240 Ga. App. 394, 397 (3) (523 SE2d 615) (1999). Moreover, Vega can show no harm resulting from the alleged violation of OCGA § 17-16-4 (a) (1), because the tape "was not introduced into evidence. See OCGA § 17-16-6 (strongest remedy for violation of discovery request is exclusion of suppressed evidence)." *Bertholf v. State*, 224 Ga. App. 831, 832 (1) (482 SE2d 469) (1997).

3. The trial court granted a motion in limine filed by the State, excluding testimony of the investigating officer that Padilla said that he was not present at the scene of the crime but that a person identified as "Nicaragua" told Padilla what happened. Relying on *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982), Vega urges that the officer's testimony is admissible under OCGA § 24-3-2 to explain his conduct and motives with regard to his lack of further investigation into potentially exculpatory evidence. Vega acknowledges that *Momon* limits this code section to rare instances, but

argues that the *Momon* rule was designed to protect criminal defendants and should not hinder them from revealing the actual circumstances of the case.

The *Momon* rule, as explained in *Teague v. State*, 252 Ga. 534 (1) (314 SE2d 910) (1984) and numerous other cases, has not been applied only to the State, but consistently has been applied to prevent criminal defendants from introducing hearsay. *Cowards v. State*, 266 Ga. 191, 194 (3) (a) (465 SE2d 677) (1996); *Appleby v. State*, 256 Ga. 304, 306 (3) (348 SE2d 630) (1986); *Lewis v. State*, 292 Ga. App. 257, 268 (3) (a) (iii) (663 SE2d 721) (2008). That rule, as expressed in our precedent, and its underlying rationale are applicable to both parties equally:

> "[W]here the conduct and motives of the actor are not matters concerning which the truth must be found (i.e., are irrelevant to the issues on trial) then the information, etc., on which he or she acted shall not be admissible under" OCGA § 24-3-2. *Momon v. State*, [supra]. "(O)nly in rare instances will the 'conduct' of an investigating officer need to be 'explained(.)' " *Teague v. State*, [supra at] 536 (1) . . . . Otherwise, "it is error to permit an investigating officer to testify, under the guise of explaining the officer's conduct, to what other persons related to the officer during the investigation. (Cits.)" [Cit.] The mere circumstance of an officer's initiation and continuation of an investigation, without more, is not a relevant inquiry. [Cit.]

*White v. State*, 273 Ga. 787, 788 (1) (546 SE2d 514) (2001). If the trial court had denied the motion in limine, defense counsel would have been allowed to ask "the officer what an alleged witness had told him [that yet another person said he] had seen. It has not been shown that the motives or any conduct of the investigating officer [was] relevant to any issue in the case . . . . [Cit.]" *Appleby v. State*, supra. Thus, we conclude that "the trial court correctly prohibited [Vega]'s attempt to elicit testimony that was both double hearsay [cits.] and irrelevant" to explain conduct. *Lee v. State*, 241 Ga. App. 182, 183 (1) (525 SE2d 426) (1999).

> As this is not one of the rare instances in which the investigating officer's motive, intent, or state of mind is a matter concerning which the truth must be found, it was not error to refuse to permit the officer to give hearsay testimony in order to explain his conduct concerning the investigation.

*Cowards v. State*, supra.

Moreover, Maye testified that, as he arrived, he saw a person other than Vega leave the building. The investigating officer testified that he investigated Padilla and other persons matching the description given by Maye, but that Padilla's information was hearsay and could not be corroborated. Vega also elicited evidence regarding the bad character of Padilla. Based on all of this evidence, Vega suggested during closing argument that Padilla was responsible for the arson. Accordingly, even if the trial court had erred in excluding the testimony in question, that exclusion was harmless in light of the other evidence regarding the investigation and the presence of another individual at the scene. See *Nix v. State*, 280 Ga. 141, 144 (5) (625 SE2d 746) (2006); *Harris v. State*, 274 Ga. 422, 426 (5) (554 SE2d 458) (2001).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 9, 2009.

*Krista C. Dunning, William S. Lewis, Jennifer R. Burns*, for appellant.

*Spencer Lawton, Jr., District Attorney, Ann M. Elmore, Assistant District Attorney, Thurbert E. Baker, Attorney General*, for appellee.